KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
HEATHER L. PICKERELL, ESQ., STATE BAR NO. 346211
HPICKERELL@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiff ALANIS MORISSETTE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALANIS MORISSETTE,<br>Plaintiff,<br>vs.<br>KEREN URINOV,<br>Defendant. | Case No.<br>**COMPLAINT**<br>**(1) Civil Extortion**<br>**(2) Fraud**<br>**(3) Negligent Misrepresentation**<br>**DEMAND FOR JURY TRIAL** |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## INTRODUCTION

1. Plaintiff Alanis Morissette is the victim of a calculated blackmail campaign orchestrated by a disgruntled former tour manager, Defendant Keren Urinov. While temporarily employed to manage a Morissette tour, Urinov admitted to the British Border Force that a bag seized at an airport that allegedly contained marijuana and xylazine belonged to her. Urinov now threatens to report to the British authorities that Morissette committed drug trafficking unless Morissette agrees to employ her as a tour director for *fifteen years* and pay her massive compensation. Morissette will not be coerced into delivering her blackmailer an extraordinary payday. She sues to expose Urinov's scheme and hold her accountable.

## PARTIES

2. Plaintiff Alanis Morissette is domiciled in Los Angeles, California.

3. On information and belief, Defendant Keren Urinov is domiciled in Israel.

## JURISDICTION

4. This Court has jurisdiction over this dispute under 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Morissette is a citizen of California and Urinov is a citizen of Israel.

## VENUE

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

6. Should this Court decide that venue is not proper under 28 U.S.C. § 1391(b)(2), venue is proper under 28 U.S.C. § 1391(b)(3) because Urinov is subject to this Court's personal jurisdiction in this judicial district.

## GENERAL ALLEGATIONS

7. In 2025, Morissette hired Urinov to serve as her temporary tour

manager for her upcoming tour.

8. On July 12, 2025, Morissette and her team, including Urinov, were due to fly from Farnborough Airport in the United Kingdom to Spain for one of Morissette's concerts. At the airport, a British Border Force official flagged a bag for further inspection and asked who owned the bag. Urinov said the bag was hers.

9. Later, Urinov told Morissette and her team the following. The Border Force had arrested her and issued her a seizure notice alleging that the bag contained marijuana and xylazine. During questioning, Urinov admitted to the Border Force that the bag and its contents—including the alleged drugs—belonged to her. Urinov showed the Border Force her Israeli medical marijuana license. The Border Force returned the bag to Urinov and released her.

10. The next day, on July 13, 2025, Urinov flew to Barcelona to rejoin the tour. Morissette, Urinov, and the rest of the team flew back to the United Kingdom the same day. Upon landing, Border Force officers detained Urinov for further questioning about the bag that had been seized the previous day. Later, Urinov told Morissette and her team that she had once again admitted to the Border Force that the bag and the alleged drugs inside belonged to her.

11. After the tour ended, Urinov and her attorney sent a series of increasingly extortionate letters to Morissette. Urinov threatened to file a patently frivolous lawsuit against Morissette in the United Kingdom for unspecified claims if Morissette refused to tell British law enforcement that the alleged drugs were hers. However, Urinov communicated, Morissette could put "an end to the matter" by entering into a fixed-term, full-time employment contract of fifteen years with Urinov, under which Urinov would receive an income equivalent to that of a tour director with annual increases and bonuses. Urinov also demanded that Morissette arrange for an immigration attorney to obtain a work visa that would allow Urinov to work in the United States. If a visa could not be obtained, Urinov demanded additional compensation.

12. Morissette is not interested in employing Urinov for fifteen years—not only because she is a blackmailer, but also because she was a terrible manager of the 2025 tour. To name just one example, Morissette unnecessarily spent nearly $70,000 after Urinov made an inexplicable error with a hotel booking that no competent tour manager would have made. Also, while on tour, Urinov told Morissette's team that law enforcement in a Latin American country had arrested her and a friend several years ago for smuggling drugs in a surfboard. Urinov explained that she had illegally fled the country after being released on bail. This was an astounding revelation, given that Urinov had told Morissette's team during her interview for the tour manager position that nothing in her past would cause any complications with obtaining visas or traveling, and she never mentioned her arrest or crimes in Latin America.

13. So, Morissette refused Urinov's brazen demands. Urinov's counsel responded with a carefully worded letter that clearly implied that Urinov would report Morissette to the British authorities for drug trafficking in addition to suing her unless she capitulated to Urinov's demands for employment and compensation.

14. Morissette brings this lawsuit reluctantly. She is aware of the attacks on her character that may ensue. But Morissette will not agree to work with an incompetent blackmailer for the next fifteen years or pay her a ransom under the gun. She has no choice but to sue.

## <u>**FIRST CLAIM FOR RELIEF**</u>

**(Civil Extortion)**

15. Morissette incorporates the foregoing allegations as if fully set forth.

16. Urinov sent letters threatening to accuse Morissette of a crime. She sent letters threatening to expose or impute to Morissette a deformity, disgrace, or crime. She attempted, by means of threat, to extort property or other consideration from Morissette.

17. When making these threats, Urinov sought to obtain Morissette's

consent to provide fifteen years of employment to Urinov and to pay Urinov compensation.

18. As a result of Urinov's threats and attempted extortion, Morissette has suffered damages. Morissette has paid for some of Urinov's legal fees. Morissette has also incurred substantial legal fees.

19. Urinov has acted with oppression, fraud, or malice. Morissette is thus entitled to punitive damages.

**SECOND CLAIM FOR RELIEF**

**(Fraud)**

20. Morissette incorporates the foregoing allegations as if fully set forth.

21. Urinov falsely represented to Morissette that nothing in her past would cause any complications for obtaining visas or traveling. She intentionally failed to disclose that she had been arrested for smuggling drugs in a Latin American country and had illegally fled the country while on bail.

22. Urinov knew that the representation was false when she made it, or she made the representation recklessly and without regard for its truth.

23. Urinov intended that Morissette rely on that representation when hiring her.

24. Morissette justifiably relied on Urinov's fraudulent representation when deciding to enter into an employment agreement in California with her.

25. As a result of Urinov's fraud, Morissette was harmed in an amount to be proven at trial.

26. Urinov has acted with oppression, fraud, or malice. Morissette is thus entitled to punitive damages.

**THIRD CLAIM FOR RELIEF**

**(Negligent Misrepresentation)**

27. Morissette incorporates the foregoing allegations as if fully set forth.

28. Urinov misrepresented a material fact to Morissette by telling her that

nothing in her past would cause any complications with obtaining visas or traveling.

29. Urinov had no reasonable grounds for believing that her crimes in Ecuador would not cause complications for obtaining visas or traveling.

30. Urinov made the misrepresentation with the intent to induce Morissette to rely on the fact misrepresented when deciding to enter into an employment agreement in California with her.

31. Morissette justifiably relied on Urinov's misrepresentation when deciding to hire her.

32. As a result of Urinov's misrepresentation, Morissette was harmed in an amount to be proven at trial.

## PRAYER FOR RELIEF

Morissette prays for judgment against Urinov as follows:

1. For compensatory damages of an amount in excess of $75,000, according to proof, plus interest at the legal rate;

2. For punitive damages; and

3. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Morissette demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

DATED: September 1, 2026

KING, HOLMES, PATERNO & SORIANO, LLP

By: */s/ Howard E. King*

HOWARD E. KING
HEATHER L. PICKERELL
Attorneys for Plaintiff ALANIS MORISSETTE